Approved, SCAO

| | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>2nd    JUDICIAL CIRCUIT<br>COUNTY | SUMMONS | CASE NO.<br>23 - - 0 2 5 7 -CZ-S |
|---|---|---|

| Court address | Court telephone no. |
|---|---|
| 811 Port Street, St. Joseph, MI 49085 | 269-983-7111 |

| Plaintiff's name, address, and telephone no. | | Defendant's name, address, and telephone no. |
|---|---|---|
| Arthur D. Collins Jr., as Trustee<br>Sophia N. Shaw, as Trustee<br>c/o MCSHANE & BOWIE, P.L.C.<br>99 Monroe NW, Suite 1100<br>Grand Rapids, MI 49503 | v | Lake House 1, LLC<br>c/o Sally Taylor, RA<br>Passaro, Kahne, Taylor, Defrancesco & Thompson Law<br>Office<br>685 West Main Street<br>Benton Harbor, MI 49022 |
| Plaintiff's attorney, bar no., address, and telephone no.<br>James R. Bruinsma (P48531)<br>McShane & Bowie, P.L.C.<br>99 Monroe Ave NW, Suite 1100<br>Grand Rapids, MI 49503<br>(616) 732-5000 | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____

The action ☐ remains ☐ is no longer  pending.

Summons section completed by court clerk.

**SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside of Michigan).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>11/06/2023 | Expiration date*<br>02/05/2024 | Court clerk | SHARON J. TYLER |
|---|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01   (3/23)   **SUMMONS**                                          MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105
848638

# State of Michigan

### In the Berrien County Trial Court

**Arthur D. Collins Jr.,** as Trustee
of the Arthur D. Collins Jr. Revocable Trust, and

**Sophia N. Shaw,** as Trustee of the
Sophia N. Shaw Revocable Trust,

     Plaintiffs,

v

**Lake House 1, LLC,**
 a Michigan Limited Liability Company,

**Benjamin Lurie and Sarah Lurie,**
husband and wife,

jointly and severally,

     Defendants.

23 - - 0 2 5 7

Case No. 23 – _____ – CZ –5

Hon. STERLING R. SCHROCK

---

## Complaint

There is no other pending or resolved civil
action arising out of the transaction or
occurrence alleged in this Complaint.

---

James R. Bruinsma (P48531)
Laura A. Kane (P85453)
**McShane & Bowie, p.l.c.**
Counsel for Plaintiff
99 Monroe Avenue NW, Ste. 1100
Grand Rapids, MI 49503
(616) 732-5000
Jjb@msblaw.com

---

Plaintiff Arthur D. Collins Jr., as Trustee of the Arthur D. Collins Jr. Revocable Trust (the **Collins Trust**) and Sophia N. Shaw, as Trustee of the Sophia N. Shaw Revocable Trust (the **Shaw Trust**; collectively, **Plaintiffs**), by counsel, McShane & Bowie, P.L.C., file this complaint against Defendants Lake House 1, LLC, Benjamin Lurie, and Sarah Lurie, and state in support the following:

## Introduction

1.    This dispute arises out of a residential real estate transaction for the sale and purchase of real property located in Berrien County, Michigan that occurred in 2022. Defendants sold the property to Plaintiff after not only failing to disclose longstanding flooding issues with the property, but also after taking active steps to conceal and prevent discovery of those flooding issues, including mold caused by prior flooding events. Despite repeated requests by Plaintiffs, Defendants have failed and refused to pay for the financial injuries suffered by the Collins from that flooding, necessitating this action, as more particularly set forth below.

## Parties, Jurisdiction, and Venue

2.    In their respective capacities as trustees of the Collins Trust and the Shaw Trust, Arthur Collins and Sophia Shaw each owns an undivided one-half interest in real property in Chikaming Township, Berrien County, Michigan, commonly known as 9228 Pier Street A, Lakeside, MI 49116 (the **Property**) and more particularly described as follows:

> Part of the Northeast Quarter of Section 19, Town 7 South, Range 20 West, described as: Commencing at the East ¼ corner of said Section 19, thence South, on the East line of said Section 19, a distance of 366.66 feet to the centerline of Pier Street, thence North 47 degrees

01 minutes 47 seconds West on said centerline, 1471.48 feet to the point of beginning of the land herein described; thence South 42 degrees 55 minutes 14 seconds West 120.00 feet; thence North 47 degrees 01 minutes 47 seconds West 222.00 feet to a meander point; thence North 42 degrees 55 minutes 14 seconds East, on a meander line, 120.00 feet to the centerline of Pier Street; thence South 47 degrees 01 Minutes 47 seconds East, along said centerline, 222.00 feet to the point of beginning.

ALSO all that land lying between the meander line and the ordinary high water mark of Lake Michigan, all between the Southwesterly and Northeasterly parcel lines extended on their respective bearings to said Lake Michigan.

Together with the following 40 foot wide easement for ingress and egress and utilities: That part of the Northeast Quarter of Section 19, Town 7 South, Range 20 West, described as: Commencing at the East ¼ corner of said Section 19; thence South on the East line of said Section 19, a distance of 336.66 feet to the centerline of Pier Street; thence North 47 degrees 01 minutes 47 seconds West on said centerline, 1471.48 feet to the point of beginning of the land herein described; thence South 42 degrees 55 minutes 14 seconds West 120.00 feet; thence North 47 degrees 01 minutes 47 seconds West, 40.00 feet; thence North 42 degrees 55 minutes 14 seconds East, 120.00 to the centerline of Pier Road; thence South 47 degrees 01 minutes 47 seconds East along said centerline, 40.00 feet to the point of beginning.

(Permanent Parcel No. 11-07-0019-0010-03-9).

3.    The Property consists of 0.92 acres and is improved with a two-story house (with a basement) that was built in 2004.

4.    Defendant Lake House 1, LLC, is a Michigan limited liability company that was organized in 2020 with a Resident Agent of Sally Taylor, Passaro, Kahne, Taylor, Defrancesco & Thompson Law Office, 685 West Main Street, Benton Harbor, MI 49022 (*Lake House*).

5.    Defendants Benjamin and Sarah Lurie (the *Luries*) are husband and wife who currently reside in the City of Chicago, Cook County, State of Illinois. The Luries

—3—

are the owners of Lake House 1, LLC and the former owners of the Property. The

Luries and Lake House are referred to collectively as *Defendants*.

6.    This Court has jurisdiction as this action involves an amount in controversy

that exceeds $25,000, exclusive of interests and costs.

7.    Venue is proper in this Court under MCL 600.1605 because the property

that is the subject matter of this dispute is located in Berrien County, State of

Michigan.

## General Allegations

8.    In 2020, Defendants offered the Property for sale through their listing

broker, @Properties (Jackson Matson, Agent).

9.    As of the listing for the Property in 2020, Defendants had owned and

occupied the Property for many years.

*The Seller's Disclosure Statement*

10.    In connection with their listing of the Property for sale, Defendants

prepared and caused to be disseminated a Seller's Disclosure Statement for the

Property under MCL 565.951 *et seq.*

11.    A copy of Defendants' Seller's Disclosure Statement is attached to this

Complaint as **Exhibit A** and incorporated by reference.

12.    As provided by law, such a disclosure statement is to contain information

known by the seller as to the condition of the Property at the time the disclosures are

made.

13.  On page 1 of the Seller's Disclosure Statement, under the section on "Property conditions, improvements, & additional information", Defendants made the following representations:

a.  That there has been evidence of water in the basement or crawl space; and

b.  Water shut off system installed – all new carpet.

14.  On page 2 of the Seller's Disclosure Statement, Defendants represented that there had been no "settling, flooding, drainage, structural or grading problems" with the Property or its improvements.

15.  By signing the Seller's Disclosure Statement, the Luries certified that "the information in this statement is true and correct to the best of the Seller's knowledge as of the date of Seller's signature." *Id.*

16.  Defendants' representations were false and intended to mislead prospective buyers, including Plaintiffs.

17.  At the time that Defendants prepared and certified the contents of the Seller's Disclosure Statement, and during Defendants' ownership and occupation of the Property, the Property had experienced one or more flooding events caused by surface water drainage issues.

18.  Defendants' never took corrective action as to the these flooding events, and Defendants knew or should have known that such flooding events would recur without such corrective action.

19.  Defendants' representations regarding the water shut-off valve falsely represents that the source of the water leak was an internal plumbing leak or

overflowing toilet, rather than an intrusion of surface water or other external flooding.

20.   Defendants' representation that there had been no flooding or drainage problem concealed that there in fact had been flooding and drainage problems that had caused substantial damage to the Property, including a proliferation of black mold in the basement of the Property.

*Defendants' Concealment of Evidence of Water Damage and the Presence of Mold*

21.   Instead of properly and completely remediating the water damage, Defendants undertook efforts to conceal evidence of water damage prior to listing the Property for sale.

22.   Among other things, before Plaintiffs purchased the Property, Defendants replaced carpet and used encapsulants, primer, and paint to conceal evidence of water damage on the drywall in the basement of the Property.

23.   After an encapsulant or primer and paint was applied to the basement drywall, the water damage and mold was not readily visible and could not be detected by a non-destructive inspection.

24.   Defendants removed and replaced particular sections of drywall in the utility room in the basement.

25.   Defendants removed or concealed water damage to the basement carpet.

26.   Defendants removed and replaced water damaged baseboards in the basement to conceal evidence of water damage and mold.

27.   Th water damage that was covered with encapsulants or primer and paint caused the development of mold that was visible upon removal of the drywall.

28.   The picture below, taken after the concealing efforts of Defendants were removed, shows that this area was a flood hazard that had flooded several times before:



*The Purchase Agreement*

29.   In the summer of 2022, Plaintiffs viewed the Property with their real estate agent.

30.   On July 29, 2022, after receiving a copy of the Seller's Disclosure Statement, Plaintiffs made an offer to purchase the Property for Three Million Nine Hundred Thousand and 00/100 Dollars.

31.    Defendants accepted Plaintiffs' offer, and the parties entered into a purchase agreement for the Property on or about August 1, 2022 (the **Purchase Agreement**). See Purchase Agreement, attached as **Exhibit B**.

32.    The Purchase Agreement provides that Plaintiffs received a copy of the Seller's Disclosure Statement dated July 2, 2022. *Id.* at ¶ 11.

33.    Plaintiffs relied on Sellers' Disclosure Statement when deciding to purchase the Property, including the representations that any water issues had been corrected by a an internal water shut off valve and that no flooding or drainage issues existed on the Property.

34.    Because of the efforts to conceal the flooding as more particularly described above, neither Plaintiffs nor their agents were able to learn the true condition of the Property or to discover that the Property was prone to flooding and infested with black mold.

35.    But for the misrepresentations of Defendants, coupled with their active efforts to conceal the flooding damage to the Property, Plaintiffs would not have offered to purchase the Property for the offered price and would not have closed on the purchase of the Property.

36.    The parties closed on the sale and purchase of the Property on August 29, 2022, which Defendants conveyed by warranty deed to Plaintiffs. A copy of the warranty deed is attached to this Complaint as **Exhibit C**.

37.    Plaintiffs tendered the purchase price and otherwise performed all obligations required of them under the Purchase Agreement.

*Plaintiffs Learns of Past Flooding Event at the Property from Ayers and ServPro*

38.  On July 28, 2023, Plaintiffs experienced significant rainwater flooding throughout the lower level/basement of the property.

39.  Plaintiffs undertook immediate efforts to engage a damage clean-up and restoration company the morning after the flood.

40.  Plaintiffs engaged ServPro of Berrien County (**ServPro**) and were informed by ServPro that the company had done work at the Property for the Luries in March of 2022 related to rainwater intrusion flooding.

41.  Plaintiffs thereafter hired Ayers Basement Systems (**Ayers**) to assess the damage and to install a drainage system that would preclude that type of flooding from recurring.

42.  While on the Property, Ayers's employees confirmed that there was evidence of previous rainwater intrusion flooding and that black mold from the flooding was present behind the drywall that had been installed by Defendants prior to listing the Property for sale.

43.  Ayers provided a Project Completion Form and noted "Noticed signs of water damage for some time over years, and mold."

*Repair Costs*

44.  Due to the environmental and health hazard presented by the condition of the Property, Plaintiffs sought and obtained estimates for the cost to remediate the water damage and mold at the Property from several environmental remediation companies.

45.    Plaintiffs thereafter made substantial repairs to the interior of the house on the Property, as well undertaking corrective grading and drainage measure to prevent a recurrence of the flooding from surface water.

46.    Plaintiffs have incurred tens of thousands of dollars in repair and remediation efforts since closing on the purchase of the Property.

47.    Plaintiffs have or will have to incur additional out-of-pocket costs directly and proximately caused by Defendants' wrongful conduct.

## Count I
### *Fraudulent Misrepresentation*

48.    Plaintiffs incorporate by reference paragraphs 1–47 as though fully set forth herein.

49.    When Defendants completed the Seller's Disclosure Statement, stating, among other things, that there was evidence of water in the basement and that they installed a water shut-off system (not related to rainwater intrusion) and new carpet, and that there was no "settling, flooding, drainage, structural or grading problems" these disclosures were materially false representations regarding the condition of the Property

50.    When Defendants signed these disclosures, they knew that these representations were false.

51.    Plaintiffs relied on Defendants' disclosures regarding water in the basement and that there had been no flooding events.

52.    Had Plaintiffs known that mold was present at the Property or that there was extensive water damage throughout the Property, they would not have purchased the Property.

53.    Plaintiffs reliance on Defendants' representations was reasonable given that Defendants disclosures were incorporated by reference into the Purchase Agreement, the inspection report did not contradict Defendants representations or otherwise put Plaintiffs on notice that there were deficient conditions at the Property that required further inquiry, and because Plaintiffs otherwise lacked the means to determine the truth as to the condition of the Property where the water damage and presence of mold was not visible during the inspection because it had been concealed by Defendants.

54.    As a direct and proximate result of their reliance on these representations, Plaintiffs have suffered injuries for which damages are owed in an amount in excess of $25,000, including damages to compensate Plaintiffs for costs to determine the presence of water damage and mold and costs incurred and to be incurred to properly and completely remediate the Property so that it is safe and habitable.

FOR THESE REASONS, Plaintiffs request that this Court (a) enter a Judgment in their favor and against Defendants; (b) award damages sufficient to redress the injuries to Plaintiffs plus statutory interest, including costs to properly and fully remediate the water damage and mold, (c) award reasonable attorney's fees and actual costs incurred in connection with this action, and (d) provide all other relief that this Court deems just and equitable.

## Count II
*Silent Fraud*

55.    Plaintiffs incorporate by reference paragraphs 1–54 as though fully set forth herein.

56.    Under the Seller Disclosure Act, MCL 565.951 *et seq.*, Defendants had a legal duty to correctly and accurately disclose known conditions affecting the Property and to use good faith and ordinary care in making and delivering these disclosures to a subsequent purchaser.

57.    Defendants failed to disclose material facts about the condition of the Property.

58.    Defendants had actual knowledge that, among other things, there was evidence of the presence of water and flooding in the basement.

59.    Defendants, by undertaking remedial efforts to conceal the existence, extent, and nature of these defects, engaged in conduct that was false, misleading, and done with the intent to deceive by creating a false impression regarding the condition of the Property.

60.    Defendants knew that the carpet was visibly damaged by the water, so they removed and replaced carpet and drywall from the basement that would disclose evidence of water damage and mold; and they encapsulated or primed and painted the basement walls to conceal evidence of water damage and the presence of mold.

61.    As a result of relying on these representations, Plaintiffs have suffered injuries for which damages are owed in an amount in excess of $25,000 for costs related to non-disclosed and concealed conditions of the Property, including costs to

determine the presence of water damage and mold and costs to be incurred to properly and completely remediate the Property so that it is safe and habitable.

FOR THESE REASONS, Plaintiffs request that this Court (a) enter a Judgment in their favor and against Defendants; (b) award damages sufficient to redress the injuries to Plaintiffs plus statutory interest, including costs to properly and fully remediate the water damage and mold; (c) award reasonable attorney's fees and actual costs incurred in connection with this action; and (d) provide all other such relief that this Court deems just and equitable.

## Count III
### *Negligent Misrepresentation*

62. Plaintiffs incorporate by reference paragraphs 1–61 as though fully set forth herein.

63. To the extent that the affirmative representations, concealment of defects, and suppression of the facts regarding the condition of the Property as described above were not the intentional acts or omissions of Defendants, Defendants' disclosures were negligent.

64. Defendants owed a duty to Plaintiffs under the Seller Disclosure Act to disclose, in good faith, known facts regarding the condition of the Property.

65. To the extent that Defendants' disclosures were negligent rather than fraudulent, Defendants completed the Seller's Disclosure Statement without ordinary care.

66. Given that Defendants engaged ServPro to perform remediation work in 2022 prior to the completion of the Seller's Disclosure Statement and prior to the

closing on the sale of the Property, Defendants' had or would have had actual knowledge regarding the inaccuracy of the disclosures if they had exercised ordinary care.

67.    Defendants breached the duty owed to Plaintiffs to disclose conditions regarding the Property that they should have known at the time the Seller's Disclosure Statement was provided to Plaintiffs on July 29, 2022.

68.    Plaintiffs actually and justifiably relied on Defendants' errors, inaccuracies, and/or omissions in the Seller's Disclosure Statement to their detriment.

69.    As a direct and proximate result of their detrimental reliance on the errors, inaccuracies, and omissions in the Seller's Disclosure Statement prepared by Defendants, Plaintiffs have suffered injuries for which damages are owed in an amount in excess of $25,000 for costs related to non-disclosed and concealed conditions of the Property, including costs to determine the presence of water damage and mold and costs to be incurred to properly and completely remediate the Property so that it is safe and habitable.

FOR THESE REASONS, Plaintiffs request that this Court (a) enter a Judgment in their favor and against Defendants; (b) award damages sufficient to redress the injuries to Plaintiffs plus statutory interest, including costs to properly and fully remediate the water damage and mold; (c) award reasonable attorney's fees and actual costs incurred in connection with this action; and (d) provide all other such relief that this Court deems just and equitable.

## Count IV
*Breach of Contract*

70.   Plaintiffs incorporates by reference paragraphs 1– 69 as though fully set forth herein.

71.   Plaintiffs offered to purchase the Property for $3,900,000 and Defendants accepted.

72.   The Purchase Agreement was a contract between the parties for the sale of the Property by Defendants to Plaintiffs.

73.   Plaintiffs performed their obligations under the Purchase Agreement at closing when they paid the purchase price of $3,900,000.

74.   Defendants breached their obligations under the Purchase Agreement by, among other things, failing to deliver the Property in the same condition as disclosed in the Seller's Disclosure Statement.

75.   Defendants' breach is the direct and proximate cause of injuries to Plaintiffs for which damages are owed, including costs related to non-disclosed and concealed conditions of the Property, costs to determine the presence of water damage and mold, and costs to be incurred to properly and completely remediate the Property so that it is safe and habitable.

FOR THESE REASONS, Plaintiffs request that this Court (a) enter a Judgment in her favor and against Defendants; (b) award damages sufficient to redress the injuries to Plaintiffs plus statutory interest, including costs to properly and fully remediate the water damage and mold; (c) award reasonable attorney's fees and actual costs incurred in connection with this action; and (d) provide any other such relief that this

Court deems just and equitable.

## Relief Requested

FOR THESE REASONS, Plaintiffs request that this Court (a) enter a Judgment in her favor and against Defendants; (b) award damages sufficient to redress the injuries to Plaintiffs plus statutory interest, including costs to properly and fully remediate the water damage and mold; (c) award reasonable attorney's fees and actual costs incurred in connection with this action; and (d) provide all other such relief that this Court deems just and equitable.

Dated: November 3, 2023

James R. Bruinsma (P48531)
**MᴄSʜᴀɴᴇ & Bᴏᴡɪᴇ, P.L.C.**
Attorneys for Plaintiff
99 Monroe Avenue, N.W., Ste. 1100
Grand Rapids, MI  49503
jjb@msblaw.com
(616) 732-5000

847424_2

—16—

DocuSign Envelope ID: 966E3A8B-457C-4055-AA8C-6ADF5294258E

# Seller's Disclosure Statement

MICHIGAN

**Property Address** ___9228 Pier Street A___

City, Village or Township

Street

**Purpose of Statement:** This statement is a disclosure of the condition of the property in compliance with the Seller Disclosure Act. This statement is a disclosure of the condition and information concerning the property, known by the Seller. Unless otherwise advised, the Seller does not possess any expertise in construction, architecture, engineering or any other specific areas related to the construction or condition of the improvements on the property or the land. Also, unless otherwise advised, the Seller has not conducted any inspection of generally inaccessible areas such as the foundation or roof. This statement is not a warranty of any kind by the Seller or by any Agent representing the Seller in this transaction, and is not a substitute for any inspections or warranties the Buyer may wish to obtain.

**Seller's Disclosure:** The Seller discloses the following information with the knowledge that even though this is not a warranty, the Seller specifically makes the following representations based on the Seller's knowledge at the signing of this document. Upon receiving this statement from the Seller, the Seller's Agent is required to provide a copy to the Buyer or Agent of the Buyer. The Seller authorizes its Agent(s) to provide a copy of this statement to any prospective Buyer in connection with any actual or anticipated sale of property. The following are representations made solely by the Seller and are not the representations of the Seller's Agent(s), if any. THIS INFORMATION IS A DISCLOSURE ONLY AND IS NOT INTENDED TO BE PART OF ANY CONTRACT BETWEEN BUYER AND SELLER.

**Instructions to the Seller:** (1) Answer ALL questions. (2) Report known conditions affecting the property. (3) Attach additional pages with your signature if additional space is required. (4) Complete this form yourself. (5) If some items do not apply to your property, check NOT AVAILABLE. If you do not know the facts, check UNKNOWN. FAILURE TO PROVIDE A PURCHASER WITH A SIGNED DISCLOSURE STATEMENT WILL ENABLE PURCHASER TO TERMINATE AN OTHERWISE BINDING PURCHASE AGREEMENT.

**Appliances/ Systems/ Services:** The items below are in working order. (The items listed below are included in the sale of the property only if the purchase agreement so provides.)

| | Yes | No | Unknown | Not Available | | Yes | No | Unknown | Not Available |
|---|---|---|---|---|---|---|---|---|---|
| Range/oven | X | | | | Washer | X | | | |
| Dishwasher | X | | | | Dryer | X | | | |
| Refrigerator | X | | | | Lawn sprinkler system | X | | | |
| Hood/fan | | | X | | Water heater | X | | | |
| Disposal | X | | | | Plumbing system | X | | | |
| TV antenna, TV rotor & controls | | | X | | Water softener/ conditioner | | X | | |
| Electrical system | X | | | | Well & pump | | X | | |
| Garage door opener & remote control | X | | | | Septic tank & drain field | | X | | |
| Alarm system | X | | | | Sump pump | X | | | |
| Intercom | | X | | | City water system | X | | | |
| Central vacuum | | X | | | City sewer system | X | | | |
| Attic fan | | X | | | Central air Conditioning | X | | | |
| Pool heater, wall liner & equipment | | X | | | Central heating system | X | | | |
| Microwave | | X | | | Wall Furnace | X | | | |
| Trash compactor | | X | | | Humidifier | | | X | |
| Ceiling fan | X | | | | Electronic air filter | | | X | |
| Sauna/hot tub | | X | | | Solar heating system | | X | | |
| | | | | | Fireplace & chimney | X | | | |
| | | | | | Wood burning system | X | | | |

Explanation (attach additional sheets if necessary): _____

UNLESS OTHERWISE AGREED, ALL HOUSEHOLD APPLIANCES ARE SOLD IN WORKING ORDER EXCEPT AS NOTED, WITHOUT WARRANTY BEYOND DATE OF CLOSING.

## Property conditions, improvements & additional information:

1. Basement/Crawlspace: Has there been evidence of water?     yes _X_    no ___
   If yes, please explain: _water shut off system installed- all new carpet_

2. Insulation: Describe, if known: _____    unknown ___  yes ___  no _X_
   Urea Formaldehyde Foam Insulation (UFFI) is installed?    yes ___  no _x_

3. Roof: Leaks? _____
   Approximate age if known: _18_

4. Well: Type of well (depth/diameter, age and repair history, if known): _N/A_    yes ___  no _X_
   Has the water been tested? _N/A_
   If yes, date of last report/results: _____

5. Septic tanks/drain fields: Condition, if known: _____

6. Heating system: Type/approximate age: _____

7. Plumbing system: Type:  copper _____  galvanized _____  other _X_
   Any known problems? _none_

8. Electrical system: Any known problems? _no- upgraded for fast internet_

9. History of infestation, if any (termites, carpenter ants, etc.): _no_

_[signature]_ Seller's Initials    _[signature]_ Buyer's Initials

Page 1 of 2
Rev. 1/06
'9228 Pier Street A'

@properties, 3399 S Lakeshore Drive St Joseph MI 49085    Phone: 2691140240    Fax 2694850711
Jackson Matron
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com

# Seller's Disclosure Statement

**Property Address** _____9228 Pier Street A_____ **MICHIGAN**
Street        City, Village or Township

10. Environmental problems: Are you aware of any substances, materials or products that may be an environmental hazard such as, but not limited to, asbestos, radon gas, formaldehyde, lead-based paint, fuel or chemical storage tanks and contaminated soil on the property.

unknown _____ yes _____ no X

If yes, please explain: _____

11. Flood Insurance: Do you have flood insurance on the property?    unknown _____ yes _____ no X
12. Mineral Rights: Do you own the mineral rights?    unknown _____ yes _____ no X

Other Items: Are you aware of any of the following:

1. Features of the property shared in common with the adjoining landowners, such as walls, fences, roads and driveways, or other features whose use or responsibility for maintenance may have an effect on the property?    unknown _____ yes _____ no X
2. Any encroachments, easements, zoning violations or nonconforming uses?    unknown _____ yes X no _____
3. Any "common areas" (facilities like pools, tennis courts, walkways, or other areas co-owned with others), or a homeowners' association that has any authority over the property?    unknown _____ yes _____ no X
4. Structural modifications, alterations, or repairs made without necessary permits or licensed contractors?    unknown _____ yes _____ no X
5. Settling, flooding, drainage, structural, or grading problems?    unknown _____ yes _____ no X
6. Major damage to the property from fire, wind, floods, or landslides?    unknown _____ yes _____ no X
7. Any underground storage tanks?    unknown _____ yes _____ no X
8. Farm or farm operation in the vicinity; or proximity to a landfill, airport, shooting range, etc.?    unknown _____ yes _____ no X
9. Any outstanding utility assessments or fees, including any natural gas main extension surcharge?    unknown _____ yes _____ no X
10. Any outstanding municipal assessments or fees?    unknown _____ yes _____ no X
11. Any pending litigation that could affect the property or the Seller's right to convey the property?    unknown _____ yes _____ no X

If the answer to any of these questions is yes, please explain. Attach additional sheets, if necessary: _____
easement

The Seller has lived in the residence on the property from _____ (date) to ____ _____ (date).
The Seller has owned the property since ____08/07/2020____ (date).
The Seller has indicated above the condition of all the items based on information known to the Seller. If any changes occur in the structural/mechanical/appliance systems of this property from the date of this form to the date of closing, Seller will immediately disclose the changes to Buyer. In no event shall the parties hold the Broker liable for any representations not directly made by the Broker or Broker's Agent.

Seller certifies that the information in this statement is true and correct to the best of Seller's knowledge as of the date of Seller's signature.

BUYER SHOULD OBTAIN PROFESSIONAL ADVICE AND INSPECTIONS OF THE PROPERTY TO MORE FULLY DETERMINE THE CONDITION OF THE PROPERTY. THESE INSPECTIONS SHOULD TAKE INDOOR AIR AND WATER QUALITY INTO ACCOUNT, AS WELL AS ANY EVIDENCE OF UNUSALLY HIGH LEVELS OF POTENTIAL ALLERGENS INCLUDING, BUT NOT LIMITED TO, HOUSEHOLD MOLD, MILDEW AND BACTERIA.

BUYER IS ADVISED THAT CERTAIN INFORMATION COMPILED PURSUANT TO THE SEX OFFENDERS REGISTRATION ACT, 1994 PA 295, MCL 28.721 TO 28.732 IS AVAILABLE TO THE PUBLIC. BUYERS SEEKING SUCH INFORMATION SHOULD CONTACT THE APPROPRIATE LOCAL LAW ENFORCEMENT AGENCY OR SHERIFF'S DEPARTMENT DIRECTLY.

BUYER IS ALSO ADVISED THAT THE STATE EQUALIZED VALUE OF THE PROPERTY, PRINCIPAL RESIDENCE EXEMPTION INFORMATION AND OTHER REAL PROPERTY TAX INFORMATION IS AVAILABLE FROM THE APPROPRIATE LOCAL ASSESSOR'S OFFICE. BUYER SHOULD NOT ASSUME THAT BUYER'S FUTURE TAX BILLS ON THE PROPERTY WILL BE THE SAME AS THE SELLER'S PRESENT TAX BILLS. UNDER MICHIGAN LAW, REAL PROPERTY TAX OBLIGATIONS CAN CHANGE SIGNIFICANTLY WHEN PROPERTY IS TRANSFERRED.

Seller _Sarah Lurie_ Ben Lurie     Date 7/2/2022

Seller _Sarah Lurie_     Date 7/2/2022

Buyer has read and acknowledges receipt of this statement.

Buyer _A Walling_     Date 7/29/2022     Time _____

Buyer _____     Date _____     Time _____

Disclaimer: This form is provided as a service of the Michigan Association of REALTORS®. Please review both the form and details of the particular transaction to ensure that each section is appropriate for the transaction. The Michigan Association of REALTORS® is not responsible for use or misuse of the form for misrepresentation or for warranties made in connection with the form.

PAGE 2 OF 2
Rev. 1/06

DocuSign Envelope ID: 147A463B-88F6-49FF-9BA6-0822E9253337

REALTOR Office Use Only
MLS No. 22027650




## BUY AND SELL AGREEMENT

For reference purposes only, the Offer Date is 07/29/2022
Selling REALTOR®/Broker is acting as a (Check One) ☐ Seller's Agent /☑Buyer's Agent /☐ Dual Agent/
☐ Transaction Coordinator.

1. **1. Parties. To:** Owner of Record
2. hereinafter called the Seller; the undersigned, hereinafter called the Buyer, hereby offers to buy the property at:
3. 9228 Pier Street A
   <span>House Number</span>                    <span>Street Name</span>
4. located in Lakeside                                                                , Berrien                        County
5. Michigan and legally described as: Per title and survey.
6. _____
7. _____
8. and Tax Code(s): 110700190010039
9. Subject to any building and use restrictions, zoning ordinances and easements of public record for the sum of _____ Dollars.
10. $ 3,900,000                    ; three million nine hundred thousand

11. **2. Fixtures & Improvements:** All improvements and appurtenances are included in the purchase price, if now in
12. or on the Property, including but not limited to the following: all buildings; landscaping; lighting fixtures and their
13. shades and bulbs; ceiling fans; hardware for draperies and curtains; window shades and blinds; built-in kitchen
14. appliances; drop-in ranges; wall to wall carpeting, if attached; all attached mirrors; all attached TV mounting
15. brackets; all attached shelving; attached work benches; stationary laundry tubs; water softener; water heater (unless
16. rented); incinerator; sump pump; water pump and pressure tank; heating and air conditioning equipment (window
17. units excluded); attached humidifiers; heating units, including add-on heating stoves and heating stoves connected
18. by flue pipe; fireplace screens, inserts, and grates; fireplace doors, if attached; liquid heating and cooking fuel
19. tanks if owned by Seller; TV antenna and complete rotor equipment; satellite dish; all support equipment for
20. inground pools; screens and storm windows and doors; awnings; installed basketball backboard, pole and goal;
21. mailbox; flagpole(s); fencing, invisible inground fencing and all related equipment, detached storage buildings;
22. underground sprinkling, including the pump; installed outdoor grills; all plantings and bulbs; garage door opener
23. and control(s); and any and all items and fixtures permanently affixed to the property; **and also includes:**
24. Range/oven, refrigerator, dishwasher, microwave, washer, dryer and all furnishings.  Minus personal property & Shearling
25. arm chair          ☒P   ☒SI                                                        (address growing crops).
26. _____

27. **3. The Terms of Purchase** shall be indicated by an "X" below.
28. ☑ CASH          The full purchase price upon execution and delivery of a warranty deed, not contingent upon
29. Buyer's ability to obtain said funds. Buyer to provide to Seller's satisfaction written proof of
30. Buyer's ability to obtain said funds within 3          business days after the Effective Date or Seller may terminate this
31. available funds within 3          business days after the Effective Date or Seller may terminate this
    Agreement by written notice of termination.

32. ☐ NEW          The full purchase price upon execution and delivery of a warranty deed contingent upon Buyer's
33. MORTGAGE     ability to obtain a _____ %; _____ mortgage which Buyer
34. agrees to apply for within _____ business days after the Effective Date and accept promptly if
35. tendered. In the event that the Buyer does not apply for financing within the time provided above,
36. the Seller may terminate this Agreement by written notice of termination, which is delivered to the
37. Buyer prior to the time the Buyer makes application for financing. Buyer hereby authorizes their
38. lender to disclose the status of the loan application and loan approval to Listing and Selling
39. REALTORS®/Brokers and release copy of the Closing Disclosure, when issued, to Listing and
40. Selling REALTORS®/ Brokers.

41. ☐ LAND       $ _____ upon execution and delivery of Land Contract/Purchase Money Mortgage
42. CONTRACT    wherein the balance of the purchase price shall be payable in equal monthly installments of
43. or          $ _____ or more per month.
44. ☐            The first installment shall be due and payable _____ days after date of closing. The
45. PURCHASE    monthly installment will include interest at _____ % per annum. Interest shall commence on
46. MONEY       date of closing. The entire balance shall be payable within _____ months. In addition,
47. MORTGAGE    Buyer agrees to pay all taxes and insurance ☐ separately when due or ☐ monthly in addition to the
48.             above monthly payment.

49. ☐ OTHER FINANCING as set forth on the attached Financing Addendum.

ADC☐  ☐ Buyer's Initials          ☒P  ☒SI Seller's Initials

Copyright April 2021 by The Southwestern Michigan Association of REALTORS, Inc. Use
of this form by non-members is strictly prohibited.

DocuSign Envelope ID: 147A463B-88F6-49FF-9BA6-0822E9253337

# BUY AND SELL AGREEMENT

50.  **4. Closing/Possession.** The sale shall be closed on 08/29/2022_____ or before, if mutually
51.  agreed by the parties. Closing of this sale shall be an insured closing through the title company that provides the
52.  mortgage policy of title insurance, or in the case of a cash sale, the owners policy of title insurance. The closing
53.  fee shall be paid by the Buyer. Buyer shall have complete possession at _____ (☐a.m., ☐p.m.,
54.  ☐noon) day & time of _____ closing. After possession date, if the Seller remains, the Seller agrees to pay
55.  the Buyer at the rate of $500_____ per day. Said payment shall not be construed as rent, but as
56.  liquidated damages. Buyer may proceed with other legal remedies as well.

57.  **5. Title Insurance.** The Seller shall furnish an extended Owner's Policy of Title Insurance, if available, in the
58.  amount of purchase price. It is recommended that Buyer retain an attorney to render an opinion on marketability of
59.  title. The Seller shall deliver the title insurance commitment to Buyer within ten (10) business days of the Effective
60.  Date of this Agreement.

61.  **6. Home Sale Contingency.** The Buyer's obligation to consummate this transaction (check one):
62.  ☑Is not contingent upon the sale or closing of any other property by Buyer.
63.  ☐Is contingent upon the closing of a pending sale of Buyer's property located at _____
64.  _____ on or before _____. A copy of the Buyer's
65.  agreement to sell that property is being delivered to the Seller along with this offer.
66.  ☐Is contingent upon the execution of a binding agreement and the closing of a sale of Buyer's property located at
67.  _____ on or before
68.  _____. Seller will have the right to continue to market Seller's property until Buyer enters into a
69.  binding agreement to sell Buyer's property and delivers a copy thereof to Seller. Said agreement can not be subject
70.  to the sale of another property, but can be subject to a pending sale. During such marketing period, Seller may
71.  enter into a binding agreement with another Buyer on such price and terms as the Seller deems appropriate, and in
72.  such event, this Agreement will automatically terminate and Buyer's earnest money deposit will be promptly
73.  refunded.
74.  ☐Is contingent on the terms of the attached Contingency Clause Addendum.

75.  **7. Wood Destroying Insect Inspection.** The Seller agrees to have **all structures** on the property except
76.  _____, inspected for wood destroying insects and pay for the inspection.
77.  Seller shall provide the written report to the Buyer within 7_____ business days of the Effective Date of this
78.  Agreement. If evidence of infestation is found and if treatment is recommended, Seller agrees to pay the cost of
79.  treatment by a licensed exterminator. Termite treatments shall include a one year warranty. Any and all warranty
80.  renewals shall be at the Buyer's expense.

81.  **8. Inspections/Permits.** Buyer acknowledges that the Selling REALTOR®/Broker has strongly recommended that
82.  Buyer obtain all inspections necessary to properly determine the condition of this property.

83.  ☐No additional inspection requested, or ☑This Agreement is contingent upon inspection reports or permits, the
84.  result of which are to be satisfactory to the Buyer on the following items: (check applicable boxes)
85.  ☑Home Inspection  ☐Well  ☐Water Quality  ☐Septic System  ☐Septic Permit
86.  ☐Percolation Test/Soil Analysis  ☐DEQ Permits  ☐Water/Well Permit  ☐Easements  ☑Radon
87.  ☐Zoning Determination  ☐Phase I Environmental Audit  ☐Other items for inspection/permit: _____
88.  _____
89.  _____
90.  _____
91.  The above inspections shall be ordered by the Buyer, at the Buyer's expense. The Buyer must, by a written notice,
92.  either remove the inspection/permit contingencies or terminate this Agreement within 7_____ business days of
93.  the Effective Date of this Agreement.

94.  In the event the Buyer neither removes the contingencies nor terminates this Agreement in the time provided, the
95.  Buyer shall be deemed to have waived the contingencies and proceed to close this transaction. Any request by
96.  Buyer to modify this Agreement based on the results of an inspection(s) shall terminate this Agreement by the
97.  deadline indicated on line 92, unless: 1) the request is agreed to by Seller, in writing, by said date or 2) the Buyer
98.  proceeds to remove the inspection contingency, in writing, by said date. If requested by the Seller, the Buyer shall
99.  furnish copies of any written reports, permits, or permit denials to the Seller.

100. If the Buyer or Seller requests either REALTOR®/Broker, or its agents, subagents, or the Seller to recommend
101. inspectors, service providers, and/or other professionals, the Buyer and Seller agree that the REALTOR®/Broker,
102. or its agents, subagents, or the Seller shall not be liable for errors or omissions made by said inspectors, service
103. providers, and/or other professionals and that neither REALTOR®/Broker, or its agents, subagents, or the Seller,

[Buyer's Initials]  [Seller's Initials]

Copyright April 2021 by The Southwestern Michigan Association of REALTORS, Inc. Use of this form by non-members is strictly prohibited.

DocuSign Envelope ID: 147A463B-88F6-49FF-9BA6-0822E9253337

# BUY AND SELL AGREEMENT

104. jointly or severally, shall have any responsibility for the performance of any repairs made pursuant to this
105. Agreement. The Seller grants reasonable access to the property and any buildings thereon to permit the Buyer and
106. Buyer's representatives to conduct the above inspections. Buyer is solely responsible for obtaining such inspection
107. reports and estimates as they deem necessary.

108. **9. Survey.** ☐ No boundary (stake) survey requested; or ☐ Contingent upon a boundary (stake) survey paid for by
109. the ☐ Buyer or ☐ Seller; or ☑ Contingent upon a boundary (stake) survey showing all improvements on the
110. property paid for by the ☐ Buyer or ☑ Seller. The Buyer must, by written notice, either remove the boundary
111. survey contingency or terminate this Agreement within 3_____ business days of receipt of the boundary survey.
112. In event the Buyer neither removes the contingency nor terminates this Agreement in the time provided, the Buyer
113. shall be deemed to have waived the contingency and proceed to close this transaction.

114. A mortgage report, which shows the location of the major structures on the property, is not a boundary (stake)
115. survey and if required by the lender, will be paid for by the Buyer. Both Buyer and Seller acknowledge the
116. REALTORS®/Brokers recommend a stake survey to determine the true and accurate boundaries of the property.
117. Buyer understands and agrees that the REALTORS®/Brokers do not warrant location of the improvements and
118. easements on the property and the boundaries of the property nor assume any responsibility for the representations
119. made by the Seller of the location of the improvements and easements on the property and the boundaries of the
120. property.

121. **10. Lead-based Paint:** For residential property only (check ANY of the following that apply):
122. ☑ Seller represented that this residential property was built after January 1, 1978 and is exempt from the Federal
123. regulation on lead-based paint disclosure.
124. OR ☐ This property is residential and was or may have been built before 1978 as represented by the Seller. Buyer
125. acknowledges that prior to signing this Buy and Sell Agreement.
126. ☐ Buyer has received and reviewed a copy of the Lead-based Paint Sellers Disclosure Form completed by the
127. Seller on _____.
128. ☐ Buyer shall have a _____ day opportunity after the Effective Date of this Agreement to conduct an
129. ☐ inspection or ☐ risk assessment (check one) of this property for the presence of lead-based paint and/or
130. lead-based paint hazards. (Intact lead-based paint that is in good condition is not necessarily a hazard. See the EPA
131. pamphlet "Protect Your Family From Lead in Your Home" for more information. Federal regulations require up to
132. a 10 day period or mutually agreed upon period of time.) The above risk assessment shall be ordered by and at the
133. Buyer's expense and shall be performed by a certified inspector with a written report showing the results. The
134. Buyer shall by written notice to the Seller, either accept the risk assessment or inspection as satisfactory, or if
135. unsatisfactory, the Buyer has the option to terminate this Agreement within the time period provided above. If the
136. Buyer terminates this Agreement, the Buyer shall provide to Seller a copy of the risk assessment or inspection
137. report. In the event that the Buyer does not accept the results as satisfactory or terminates this Agreement in writing
138. within the time period stated above, the Buyer shall be deemed to have accepted the results of the risk assessment
139. or inspection and shall proceed to close this transaction.
140. OR ☐ Buyer, being fully informed, hereby waives their opportunity to conduct a risk assessment or inspection of
141. the property for the presence of lead-based paint and/or lead-based paint hazards.

142. **11. Property Condition.** Buyer has examined this property and Buyer is satisfied with its present condition, except
143. as may be specified herein. Buyer understands and agrees that Buyer is purchasing the property in an "AS IS"
144. condition. Buyer understands and agrees that the REALTORS®/Brokers do not warrant the condition of the
145. property nor assume any responsibility for the representations made by the Seller pertaining to the condition of the
146. property or its use for any particular purpose.

147. It is further understood that no representations or promises have been made to Buyer by the real estate brokers
148. or salespersons or by the Seller (other than those contained in this Agreement or as otherwise made or given by
149. Seller to Buyer). Buyer has received and reviewed a signed copy of the Sellers Disclosure Statement dated:
150. 07/02/2022 _____.

151. Buyer and Seller both understand that the REALTORS®/Brokers are not environmental experts. Unless expressly
152. contained in a written instrument signed by the REALTOR®/Broker, the REALTOR®/Broker and
153. REALTOR®/Broker's Salespersons have no knowledge of and make no representations regarding the environmental
154. conditions of the property, the existence of underground storage tanks at the property now, or in the past, whether
155. the property is, has been or may be listed as a site of environmental contamination, or whether any such sites are
156. located in the proximity of the property.

157. Buyer and Seller release the REALTOR®/Brokers and REALTOR®/Broker's Salespersons, and their respective
158. agents, employees, attorneys and representatives with respect to all claims arising out of or related to this

☐☐☐ Buyer's Initials                    ☐☐ Seller's Initials

Copyright April 2021 by The Southwestern Michigan Association of REALTORS, Inc. Use
of this form by non-members is strictly prohibited.

DocuSign Envelope ID: 147A463B-88F6-49FF-9BA6-0822E9253337

# BUY AND SELL AGREEMENT

159. Agreement, and addendums or Counter-Offers, all claims arising from any purported representations as to the
160. physical and environmental condition of the property covered by this Agreement or the marketability of title, and
161. all claims arising from any special assessments and/or utility bills which have been or may in the future be charged
162. against the property covered by this Agreement, and in addition, agree to indemnify and hold harmless the
163. REALTOR®/Brokers and the REALTOR®/Broker's Salespersons from any and all claims related to those matters.

164. At the time of possession, Seller agrees that the real estate and the improvements thereon, if any, shall be in the
165. same condition as they are now, with the exception of ordinary wear and tear. Between now and the time of
166. possession, Seller, at Seller's expense, shall repair any subsequent damage to the property and shall continue
167. general maintenance of the yard, buildings and mechanical systems. Seller shall not turn off utilities prior to the
168. time of possession.

169. Seller shall remove from the house, basement, attic, buildings and yard all personal property not included in the
170. sale as well as all rubbish and shall deliver the premises in broom swept condition. The Seller understands and
171. agrees that the Buyer reserves the right to do a final walk through prior to the closing to ensure the property's
172. condition is in compliance with the terms of this Agreement.

173. **12. Heating Fuel.** Buyer shall be entitled to all wood, pellets, liquid or gas heating fuel, or _____
174. located or stored upon the property at the time of possession. Seller agrees that the existing supply of wood,
175. pellets, liquid or gas heating fuel, or _____ on the premises at the time of acceptance shall not be removed,
176. sold, or disposed of by the seller and shall only be depleted in the course of normal usage.

177. **13. Seller's Representations.** Except as otherwise disclosed in writing, Seller represents to the best of Seller's
178. knowledge and belief that:
179.   a). There are no existing violations of any laws, statutes, ordinances, regulations, orders or
180.     requirements of any governmental authority affecting the property.
181.   b). There is no pending or threatened litigation, administrative action or claim relating to the
182.     property.
183.   c). The Seller is the owner of title to the property in the condition required for performance
184.     hereunder.
185.   d). Unless expressly disclosed to the Buyer in writing, the Seller represents that this property is not
186.     subject to the terms of a Public Act 116 agreement, or any other governmental, agricultural, or
187.     developmental programs or agreements which will continue with the property.
188.   e). The Seller is the owner of all development rights in the property.

189. **14. Home Warranty.** Buyer and Seller are hereby informed that home protection plans are available for purchase.
190. Such plans may provide additional protection and benefit to the parties.

191. **15. Other Provisions.** ☐ See Addenda 1. Offer contingent upon Buyers & Sellers attorney review and approval within 10 business days of
192. acceptance of offer by all parties, 2) Seller to provide documentation of all easements pertaining to the property, 3) Seller to provide any
193. environmental or engineering studies conducted regarding the bluff, 4) Seller to provide any available pool renderings
194. _____
195. _____
196. _____
197. Attachments and Addenda referenced here are part of this Agreement: _____
198. _____

199. **16. Earnest Money.** The Buyer shall deposit $ 20000 _____ with First American Title Insurance Co.
200. _____ (Escrowee) as earnest money evidencing the Buyer's good faith to be held by Escrowee
201. in trust and to apply to the purchase price. ☐ Buyer has deposited said funds with the submission of this offer, or
202. ☑ Buyer shall deposit funds within 3 business days. An additional amount for a total of 3% due 3 busn days upon atty review conclusion
203. If this offer is not accepted, or the title is not marketable, or if the contingencies specified herein cannot be met,
204. said deposit or deposits shall, upon furnishing written proof said contingency cannot be met, be refunded to the
205. Buyer. In the event the Buyer and Seller both claim the earnest money deposit, the earnest money deposit shall
206. remain in Escrowee's trust account until a civil action has determined to whom the deposit must be paid, or until
207. the Buyer and Seller have agreed, in writing, to the disposition of the deposit or the Escrowee commences a civil
208. action to interplead the earnest money deposit with the proper court pursuant to Rule 339.22313(5).

209. In the event Buyer shall fail or refuse to complete the sale on the terms herein set forth, then the Seller shall have
210. one of the following options: 1. Terminate this Agreement and direct the Escrowee to deliver the entire earnest
211. money deposit to the Seller as liquidated damages for the payment of expenses incurred in this transaction, selling

Buyer's Initials     Seller's Initials

Copyright April 2021 by The Southwestern Michigan Association of REALTORS, Inc. Use of this form by non-members is strictly prohibited.

DocuSign Envelope ID: 147A463B-88F6-49FF-9BA6-0822E9253337

# BUY AND SELL AGREEMENT

212. commissions and damages for Buyer's breach; or 2. Proceed with any remedy available under the laws of the State
213. of Michigan.

214. In the event that the Seller shall fail or refuse to complete the sale on the terms herein set forth, then the Buyer
215. shall have one of the following options: 1. Terminate this Agreement and direct the Escrowee to return the entire
216. earnest money deposit to the Buyer; or 2. Proceed with any remedy available under the laws of the State of
217. Michigan.

218. **17. Special Assessments. All** future installment payments of special assessments of public record shall be assumed
219. by the Buyer.

220. **18. Prorations.** Rents, taxes and the current year's installment payment of any special assessment shall be prorated
221. as of the date of closing this sale, it is assumed that all taxes are based on the calendar year in which they are
222. billed, with the Buyer being responsible for the day of closing. For proration purposes, all tax bills shall be added
223. together, using the last tax bill(s) issued and prorated accordingly, unless there has been a change in the taxable
224. value or special assessments on the property, in which case the proration shall be on that basis. If the Seller has
225. paid taxes in advance, the Seller shall be credited by the Buyer at the time of closing for the taxes paid in advance
226. and prorated from the date of closing to end of the calendar year.

227. If the property does not currently have a principal residence exemption (a NON PRE property) and the Buyer will
228. both close and occupy the property as their principal residence prior to June 1 of the current year, then the school
229. portion of the property tax bill will be prorated based on the property having a PRE. If the property is currently a
230. NON PRE property and the Buyer will both close and occupy the property as their principal residence after June 1
231. and prior to November 1 of the current year, then the **school portion of the winter** property tax bill, if any, will be
232. prorated based on the property having a PRE.

233. **19. Land Division Act. (check one)**
234. ☑ This property is platted and is not being divided.
235. ☐ This property is unplatted and is not a new division under the Land Division Act and the Seller owns no other
236. contiguous, unplatted land unless otherwise disclosed in writing. Seller is transferring to Buyer all available
237. divisions, if any, under Section 108 of the Land Division Act of 1967, but makes no representations as to the
238. number. Buyer has not relied on any information or opinions of the Broker(s), Salesperson(s) or Seller(s) on this
239. matter.
240. ☐ This property is unplatted and is a new division under the Land Division Act and this agreement is subject to
241. the attached Land Division Addendum.

242. **20. Effective Date.** This Agreement is effective on the date of Seller's acceptance of Buyer's offer or Buyer's
243. acceptance of any counteroffer, as the case may be, and this date shall hereafter be referred to as the "Effective
244. Date". Further, any reference to "days" in this Agreement refers to business days unless otherwise specified. The
245. first business day begins at 12:01 a.m. on the first business day after the Effective Date. Any reference to "time"
246. refers to local time.

247. **21. Electronic Communications.** The parties agree that the offer, any Counter-Offer, acceptance of any offer or
248. Counter-Offer and any other written notice or communication in connection with this transaction may be delivered
249. or given by sending or transmitting it by electronic means or by fax. **Any such communication shall be deemed**
250. **delivered at the time it is sent or transmitted.** The parties agree that the electronic signatures and initials shall
251. be deemed to be valid and binding upon the parties as if the original signatures or initials were present in the
252. documents in the handwriting of each party. Seller and Buyer agree that all communications can be made or
253. delivered to listing agent on behalf of the Seller at the fax number and/or the email address indicated on lines
254. 297/298 and to the Selling Agent on behalf of the Buyer at the fax number and/or the email address indicated on
255. lines 275/276. Either party shall provide the other with notice of any change of electronic mail addresses.

256. **22. Wire Fraud.** If you receive any electronic communication directing you to transfer funds or provide nonpublic
257. personal information, **EVEN IF THAT ELECTRONIC COMMUNICATION APPEARS TO BE FROM BROKER**
258. **OR TITLE COMPANY,** do not respond until you have verified the authenticity by direct communication with
259. Broker or Title Company. **Do not rely on telephone numbers provided on the email.** Such requests may be part
260. of a scheme to steal funds or use your identity.

261. **23. Counterparts.** This Agreement may be signed in any number of counterparts with the same effect as if the
262. signature of each counterpart were upon the same instrument.



Buyer's Initials     Seller's Initials

Copyright April 2021 by The Southwestern Michigan Association of REALTORS, Inc. Use
of this form by non-members is strictly prohibited.

DocuSign Envelope ID: 147A463B-88F6-49FF-9BA6-0822E9253337

# BUY AND SELL AGREEMENT

263. **24. The parties hereto agree that this is a legal and binding agreement, consisting of seven (7) pages and the**
264. **exhibits and addenda specifically referred to herein and constitutes the entire understanding of the parties and**
265. **there are no other agreements, expressed or implied. The REALTOR®/Broker recommends that all parties to**
266. **this Agreement retain an  attorney to protect their interests in this transaction.**

267. **25. Buyer and Seller hereby acknowledge that they have read this Agreement and have received a completed**
268. **copy of this Agreement including any of the Exhibits and Addenda referred to herein. All parties agree that time is**
269. **of the very essence of every provision of this Agreement. Unless previously withdrawn by the Buyer, the Seller**
270. **must accept this offer in writing prior to** 08/01/2022 _____ **at** 10:00 EDT ____ (☐a.m.,☑p.m.,☐noon)
271. **or this offer shall terminate.**                                  Date                Time

272. Date:  8/1/2022 ___ Time:_____ (☐A.M.,☐P.M.)  _____ Buyer Signature

273. By: _karen Stroll_____ _Donna Iwamoto_____ The Arthur D. Collins, Jr. Revocable Trust of 2010 ____ Printed
         Selling Agent                        Phone No.

274. For: _____ _____ _____ Buyer Signature
         Selling Office                        Phone No.                                        Printed

275. Selling Agent Fax No.:_____

276. Selling Agent Email Address: _____

| Selling Office License #:_____ | Listing Office License #: _____ |
| Selling Agent License #:_____ | Listing Agent License #:_____ |

277. **26. Seller's Acceptance: As owners and Sellers of the property described herein, the undersigned accepts the**
278. **Buyer's offer ☒ as written and no further Buyer signatures are required; or ☐ except for the following changes**
279. **in Seller's Counter-Offer below:**
280. _____
281. _____
282. _____
283. _____
284. _____
285. _____
286. _____
287. _____
288. **and agrees to sell in accordance therewith. In the event of a Seller's Counter-Offer, unless previously**
289. **withdrawn by the Seller, the Buyer must accept Seller's Counter-Offer in writing prior to**
290. _____ at _____ (☐a.m.,☐p.m.,☐noon) or Seller's Counter-Offer
             Date                   Time
291. **shall terminate. Seller understands that consummation of the sale or transfer of the property described in**
292. **this Agreement shall not relieve the Seller of any liability that Seller may have under the mortgage(s) to**
293. **which the property is subject, unless otherwise agreed to by the lender or required by law or regulation.**

294. Date:  8/1/2022 ___ Time:_____ (☐A.M.,☐P.M.)  _____ Seller Signature

295. By _Jackson Matson_____ _____ _____ Printed
         Listing Agent                        Phone No.

296. For: _____ _____ _____ Seller Signature
         Listing Office                        Phone No.                                        Printed

297. Listing Agent Fax No.:_____

298. Listing Agent Email Address: _____

Copyright April 2021 by The Southwestern Michigan Association of REALTORS, Inc. Use
of this form by non-members is strictly prohibited.

DocuSign Envelope ID: 147A463B-88F6-49FF-9BA6-0822E9253337

## BUY AND SELL AGREEMENT

299. **27. Buyer's Acceptance:** Buyer hereby accepts Seller's Counter-Offer in paragraph 26 above either ☐  as
300. written and no further Seller signatures are required; or ☐  except for the following changes in Buyer's Counter-
301. Offer below: _____
302. _____
303. _____
304. _____
305. _____
306. _____
307. _____
308. _____
309. _____
310. _____
311. In the event of a Buyer's Counter-Offer, unless previously withdrawn by the Buyer, the Seller must
312. accept Buyer's Counter-Offer in writing prior to _____ at _____ ☐ a.m., ☐ p.m.,
      
      <div style="margin-left:4em">Date                                 Time</div>

313. ☐ noon) or Buyer's Counter-Offer shall terminate.

314. Date: _____ Time:_____ (☐ A.M., ☐ P.M.)    _____ Buyer Signature

315.                                                            _____ Buyer Signature

316. **28. Seller's Acceptance.** ☐ As owners and Sellers of the property described herein, the undersigned accepts
317. the Buyer's Counter-Offer and no further Buyer signatures are required; or ☐ As owners and Sellers of the
318. property described herein, the undersigned rejects Buyer's Counter-Offer.

319. Date: _____ Time:_____ (☐ A.M., ☐ P.M.)    _____ Seller Signature

320.                                                            _____ Seller Signature

Copyright April 2021 by The Southwestern Michigan Association of REALTORS, Inc. Use
of this form by non-members is strictly prohibited.

CERTIFICATION DOES NOT REFLECT
POSSIBLE HOMESTEAD DENIAL

HEREBY CERTIFY That there are no Tax Liens or Titles held
y the State or any individual against the within description
nd all Taxes on same are paid for five years previous on the
ate of this instrument, as appears by the records in my office.
This certificate does not apply on taxes, if any, now in process
of collection  Also except, Deferred Special Assessments, if any,
under Act No. 225, Public Acts of 1976, as amended,
and any Specific Tax. (I.E. Enterprise Zone)

Shelly Welch

Berrien County Treasurer

Date: 09-07-22

No. 3446

Lora L. Freehling Register of Deeps
Berrien County, Michigan
Recorded

Rec        $26.00        SEPTEMBER 07, 2022  04:53:30 PM
Remon      $4.00         Recorded
Tax Crt    $5.00         Liber 3385      Page 0837 - 0838
                         Receipt #904143    W DEED    #2022361983



Liber 3385 Page 0837

Received  09/07/2022 11:25:27 AM

RAR-LAJ

WARRANTY DEED                    11-07-0019-0010-03-9 k.s
Title & Survey Examination Not Required

The Grantor(s), LAKE HOUSE 1, LLC, a Michigan Limited Liability Company, convey(s) and warrant(s) to THE ARTHUR D. COLLINS JR. REVOCABLE TRUST, as to an undivided one-half (1/2) interest, and THE SOPHIA N. SHAW TRUST OF 2009, as to an undivided one-half (1/2) interest, whose address is 1801 Gulf Shore Blvd., Apt. 702, Naples, FL 34102, the following described premises situated in the Township of Chikaming, County of Berrien, and State of Michigan:

Part of the Northeast Quarter of Section 19, Town 7 South, Range 20 West, described as: Commencing at the East 1/4 corner of said Section 19, thence South, on the East line of said Section 19, a distance of 336.66 feet to the centerline of Pier Street, thence North 47 degrees 01 minutes 47 seconds West on said centerline, 1471.48 feet to the point of beginning of the land herein described; thence South 42 degrees 55 minutes 14 seconds West 120.00 feet; thence North 47 degrees 01 minutes 47 seconds East, on a meander line, 120.00 feet to a meander point; thence North 42 degrees 55 minutes 14 seconds East, along said centerline, the centerline of Pier Street; thence South 47 degrees 01 minutes 47 seconds East, along said centerline, 222.00 feet to the point of beginning.

ALSO all that land lying between the meander line and the ordinary high water mark of Lake Michigan, all between the Southwesterly and Northeasterly parcel lines extended on their respective bearings to said Lake Michigan.

Together with the following 40 foot wide easement for ingress and egress and utilities: That part of the Northeast Quarter of Section 19, Town 7 South, Range 20 West, described as: Commencing at the East 1/4 corner of said Section 19; thence South on the East line of said Section 19, a distance of 336.66 feet to the centerline of Pier Street; thence North 47 degrees 01 minutes 47 seconds West on said centerline, 1471.48 feet to the point of beginning of the land herein described; thence South 42 degrees 55 minutes 14 seconds West 120.00 feet; thence North 47 degrees 01 minutes 47 seconds West, 40.00 feet; thence North 42 degrees 55 minutes 14 seconds East, 120.00 feet to the centerline of Pier Road; thence South 47 degrees 01 minutes 47 seconds East along said centerline, 40.00 feet to the point of beginning.

for the sum of TEN AND NO/100 ($10.00) DOLLARS and other good and valuable consideration.

- A Real Estate Transfer Valuation Affidavit is being filed simultaneous with this document pursuant to MCL 207.504, 207.525.
- Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining thereto.
- Subject to easements and restrictions of record, zoning laws and ordinances affecting the premises, and rights of the public and of any governmental unit in any part thereof taken, used or deeded for street, road or highway purposes.
- Further subject to all taxes and special assessments which shall hereafter become due and payable.
- Grantor grants Grantee the right to make any/all available divisions under §108 of the Land Division Act, Act 288 of Public Acts of 1967 as shall be permissible under said Act for the property conveyed herein.
- This property may be located within the vicinity of farmland or a farm operation. Generally accepted agricultural and management practices which may generate noise, dust, odors, and other associated conditions may be used and are protected by the Michigan Right to Farm Act.

Dated this _29_ day of August, 2022.

Signed:

LAKE HOUSE 1, LLC, a Michigan Limited Liability Company

By: _____
Printed Name: SALLY A. TAYLOR
Its: Authorized Agent

STATE OF MICHIGAN        )
                         ) ss.
COUNTY OF BERRIEN        )

On this _29_ day of August, 2022, before me, a Notary Public, in and for said County, personally appeared, SALLY A. TAYLOR, Authorized Agent of LAKE HOUSE 1, LLC, a Michigan Limited Liability Company, who acknowledged the execution of the foregoing instrument as the free act and deed of said company.

Rickie J Lehman
Notary Public of Michigan
Berrien County
Expires 06/30/2027
Acting in the County of _____

_____, Notary Public
Rickie J Lehman
Berrien County, Michigan
Commission Expires: _6 30 2027_

When Recorded Return To:  Grantee          Send Subsequent Tax Bills To: Grantee
Prepared By: SALLY A. TAYLOR, of Passaro, Kahne, Taylor, DeFrancesco & Thompson Law Offices, P.L.L.C.
685 West Main Street, Benton Harbor, Michigan 49022    Telephone:  (269) 983-0325    497354/4/ab